[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff are the two daughters of Samuel B. Shedrawny and are among his heirs and beneficiaries under his will. The defendant is one of two sons of Samuel B. Shedrawny. The other son is not a party to this action nor is the personal representative of the estate of Samuel B. Shedrawny. In the first count the plaintiffs seek to impose a constructive trust upon two bank accounts which were registered, in joint and survivorship form, in the names of Samuel B. Shedrawny and the defendant. In the second count they seek a ruling to the effect that placing the name of the CT Page 9021 defendant on those two accounts was an attempt to make a testamentary transfer and voiding any interest the defendant might have in them.
Some facts are not in dispute. On November 29, 1978 the decedent, Samuel B. Shedrawny, opened up a survivorship checking account at Citytrust, with the defendant. All deposits into this account were funds of the decedent and all drawings from that account were made to take care of his obligations. The account bore the decedent's social security number. The check book was kept in the decedent's desk. Most withdrawals were made by the decedent. The defendant had keys which gave him access to the decedent's home and desk. During the lifetime of the decedent the defendant did not draw on this account for his own benefit, but, when his father was away, particularly on rather lengthy winter vacations, the defendant did collect his father's mail and he then drew on the account to pay his father's bills. On June 6, 1986 $8,000.00 was withdrawn from this account to set up a money market account, again with Citytrust and in survivorship form with the father and the defendant as named owners and bearing the father's social security number. There is a dispute between the parties as to whether the father or the son caused this transfer and unfortunately the debt memo making the transfer notes only "per customer request debit account to purchase MMC" and does not name the person who requested it. The plaintiffs insist this was done by the son against the father's wishes; the son is equally adamant that it was instigated by the father. That account was kept in the father's safety deposit box and was found there after the father died. The defendant did sign the signature card for this account but is insistent that he knew nothing else about it until the father died and the safety deposit box was opened. So far as is known there were no drawings against this account during the father's life. I accept the defendant's version that the father set up this account and that the defendant was not involved other than signing the signature card at the father's request.
After the father's death the defendant paid the funeral bill and related expenses from the November 1978 account and presented a claim for reimbursement against the estate. The remaining balance in that account and in the money market account were then closed out by the defendant. The claim for reimbursement is not in issue in these proceedings.
The father had been extremely generous with his children, making numerous gifts to them, which as to one of the plaintiffs aggregated about $75,000. Many of these gifts had been made by setting up survivership accounts between his child CT Page 9022 and that child's children. In the case of the defendant the various gifts, other than these two accounts, were in cash.
One of the plaintiffs claimed she was told by her father that at least one of the gifts to her was to be divided equally among the four children and she assumed that the accounts with the defendant were subject the same proviso. She also testified that the defendant had told her that his accounts were subject to the same condition. The defendant vigorously denied any such condition or conversation and I accept his testimony.
It is apparent that there was a trusting relationship between that father and son such as was to be hoped for in any parent and child relationship, but it does not appear that there was anything unique about it. It is apparent that the father trusted the son to pay his bills when he was not available to do so, and this trust was not abused. However, there is no indication whatsoever that the father either asked for or received advice from the son. He was in good mental and physical health until the very end; he was conversant with joint and survivorship accounts and was aware that he could close out any such account any time he chose to do so but did not make such an election. He was aware of the fact that he had drawn a will the effect of which was to divide his assets equally among the four children. He must have been aware of the fact that if his sole purpose in setting up the November, 1978 account was to enable the son to pay his bill that result could be obtained by a power of attorney. He was aware of the fact that he had made substantial inter vivos gifts to each of his children. There is not the slightest evidence of duress, fraud, concealment, artifice or unconscionable conduct on the part of the defendant.
By no standard of proof have the plaintiffs overcome their burden to rebut the presumption as to joint and survivorship accounts provided by Connecticut General Statutes 36-3. Nor by any standard have they demonstrated a constructive trust in the accounts for their benefit.
Judgement may enter for the defendant.
J. HEALEY STATE TRIAL REFEREE